# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

AMERICAN PATENTS LLC,

    Plaintiff,

v.

PANASONIC CORPORATION OF NORTH AMERICA,

    Defendant.

Case No. 4:18-cv-766-ALM

# DEFENDANT PANASONIC CORPORATION OF NORTH AMERICA'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)

**TABLE OF CONTENTS**

**Page(s)**

I. THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM OF DIRECT INFRINGEMENT FOR ANY PATENT ..................................................... 1

II. THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM OF DIRECT PATENT INFRINGEMENT AS TO THE NETWORK PATENTS ..................................................................................................................... 3

III. THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM OF DIRECT PATENT INFRINGEMENT AS TO CLAIM 1 OF BOTH DYNAMIC CONFIGURATION PATENTS AND THE MIMO '782 PATENT ........................................................................................................................ 5

IV. THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM OF INDIRECT PATENT INFRINGEMENT FOR ANY PATENT ............................... 5

    A. Active Inducement .............................................................................. 6

    B. Contributory Infringement .................................................................. 7

V. THE INDIRECT INFRINGEMENT CLAIMS SHOULD BE DISMISSED AS TO PRE-SUIT CONDUCT ............................................................. 8

VI. THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM OF WILLFUL INFRINGEMENT FOR ANY PATENT ................................................ 9

VII. PRE-SUIT WILLFUL INFRINGEMENT ALLEGATIONS SHOULD BE DISMISSED ........................................................................................................ 10

VIII. CONCLUSION ........................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ................................................................................................... *passim*

*Bell Atlantic Corporation v. Twombly*,
 550 U.S. 570 (2007) ............................................................................................................4, 5, 6

*Commil USA, LLC v. Cisco Sys., Inc.*,
 135 S. Ct. 1920 (2015) ......................................................................................................12

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*,
 No. 6:14-cv-752-JRG-JDL, 2015 WL 4910427 (E.D. Tex. Aug. 14, 2015) ............................11

*Cywee Group Ltd v. Huawei Device Co.*,
 No. 2L17-cv-495, 2018 WL 3819392 (E.D. Tex. 2018) .........................................................11

*Disc Disease Solution, Inc. v. VGH Solutions, Inc.*,
 888 F.3d 1256 (Fed. Cir. 2018) ......................................................................................4, 5, 6

*Effectively Illuminated Pathways LLC v. Aston Martin Lagonda of N. Am., Inc.*,
 No. 6:11-cv-34-LED-JDL, 2011 WO 13223466 (E.D. Tex. Sept. 29, 2011) ............................5

*Ericsson Inc., v. D-Link Systems, Inc.*,
 773 F. 3d 1201 (Fed. Cir. 2014) ............................................................................................7

*Global-Tech Appliances, Inc. v. SEB S.A.*,
 563 U.S. 754 (2011) ............................................................................................................14

*Halo Elecs, Inc. v. Pulse Elecs., Inc.*,
 136 S. Ct. 1923 (2016) ......................................................................................................15

*Huawei Techs. Co. v. T-Mobile US Inc.*,
 No. 2:16-cv-0052-JRG-RSP, 2017 WL 1129951 (E.D. Tex. Feb. 21, 2017) ..........................15

*InMotion Imagery Techs v. Brain Damage Films*,
 No. 2:11-cv-414-JRG, 2012 WL 3283371 (E.D. Tex. Aug. 10, 2012) ..................................13

*Landmark Tech. LLC v. Aeropostale*,
 No. 6:09-cv-262, 2010 WL 5174954 (E.D. Tex. Mar. 29, 2010) ............................................5

*Lochner Techs., LLC v. AT Labs Inc.*,
 No. 2:11-cv-242-JRG, 2012 WL 2595288 (E.D. Tex. July 5, 2012) ......................................10

*McZeal v. Sprint Nextel Corp.*,
    501 F.3d 1354 (Fed. Cir. 2007)..................................................................................................4

*Nonend Inventions, N.V. v. Apple, Inc.*,
    2016 WL 1253740 (E.D. Tex. Mar. 30, 2016) .......................................................................14

*Ormco Corp. v. Align Tech., Inc.*,
    463 F.3d 1299 (Fed. Cir. 2006)..................................................................................................7

*Realtime Data LLC v. Stanley*,
    721 F. Supp. 2d. 538 (E.D. Tex., 2010) ....................................................................................5

*T-Rex Prop. AB v. Regal Entm't Group*,
    No. 6:16-cv-1029-0RWS-KNM, 2017 WL 4229372 (E.D. Tex. Aug. 31,
    2017) ........................................................................................................................................16

*WesternGeco LLC v. ION Geophysical Corp.*,
    837 F.3d 1358 (Fed. Cir. 2016)................................................................................................15

*Chapterhouse, LLC v. Shopify, Inc.*,
    No. 2:18-cv-0300-JRG, 2018 WL 6981828 (E.D. Tex. Dec. 11, 2018)................................6, 8

**Statutes**

35 U.S.C. §271(c) ...................................................................................................................12, 13

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)...................................................................................................................4

Rule 8 ........................................................................................................................................5, 11

Rule 8(a)(2) .....................................................................................................................................4

American Patents' vague claims for direct infringement, indirect infringement and willful infringement fail to meet the pleading standards set forth by the U.S. Supreme Court is *Bell Atlantic Corporation v. Twombly*, 550 U.S. 570 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009).  Vague descriptions of products such as "systems utilizing a method" and "evidence" based on speculative statements in a law review article do not meet the pleading standards. Simply put, they fail to "show[] that the pleader is entitled to relief."

**I.    THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM OF DIRECT INFRINGEMENT FOR ANY PATENT**

Plaintiff's Opposition mischaracterizes Panasonic's Motion as demanding that its Complaint provide "element by element infringement contentions actually proving infringement" (Resp., p. 3). All that Panasonic "demands" is that American Patents adequately plead "facts sufficient to place the alleged infringer on notice as to what he must defend," *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007). The Complaint does not meet this standard for direct infringement claims for the MIMO Patents, the Network Patents, or the Dynamic Configuration Patents.

American Patents' Opposition wrongly seeks to analogize this case to the complaint in *Disc Disease* (Resp., pp. 5-6).  In *Disc Disease*, the patent related to "a simple technology:" an inflatable spinal brace.  The direct infringement claim was sufficient because the simple product, an "inflatable belt with support panels," was described by a picture and a two paragraph description in the Complaint.  *Disc Disease Solution, Inc. v. VGH Solutions, Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018).

Here, the claims are to a method for synchronizing multi-input multi-output orthogonal frequency division multiplexing, method of authenticating requests for shared network resources in a computer network, and a method for dynamically configuring an input device.  (*See* Panasonic's Opening Brief (*see* Mot., p. 11)).  The Complaint accuses "systems … that include 802.11 ac and/or LTE capabilities," "products including an apparatus for synchronizing a communication system,"

1

"systems that allow for initiation and/or control of internet streamed content," "systems utilizing a method for providing access to a network resource," "systems that include advanced keyboard layouts," and (oddly), "systems utilizing a method." American Patents asserts that because these are all features, it has met its burden under Rule 8. (Resp., pp. 4-5). But without additional detail, it is unclear what product or activity is referred to, for example, by "systems utilizing a method" or "systems that allow for initiation and/or control of internet streamed content." Unlike the simple product at issue in *Disc Disease*, these "more nebulous, less tangible inventions" relating to software methods require a "higher degree of specificity to provide proper notice to the defendant. *Effectively Illuminated Pathways LLC v. Aston Martin Lagonda of N. Am., Inc.*, No. 6:11-cv-34-LED-JDL, 2011 WO 13223466, at *3 (E.D. Tex. Sept. 29, 2011); *see also Landmark Tech. LLC v. Aeropostale*, No. 6:09-cv-262, 2010 WL 5174954, at *4 (E.D. Tex. Mar. 29, 2010) ("products and services using electronic commerce systems" too vague); *Realtime Data LLC v. Stanley*, 721 F. Supp. 2d. 538, 543-44 (E.D. Tex., 2010) ("one or more data compression products or services" too vague). Given the more complex technology in this case, American Patents' heavy reliance on *Disc Disease* is misplaced.

Just last month, Chief Judge Gilstrap addressed a similar issue in *Chapterhouse*. There, the plaintiff identified a specific patent claim and accused product and its complaint broke down "the exemplary claim into individual elements with 'supporting' screenshots," parroting the claim language and referring to the screenshots. 2018 WL 6981828, at *2. Citing *Disc Disease*, the plaintiff argued this was sufficient. Chief Judge Gilstrap disagreed, finding Disc Disease "inapposite," because the claims and patents at issue in Chapterhouse were more complicated than the "relatively simple patents" of *Disc Disease*. *Id.* The court concluded that simply parroting a claim, element-by-element, and providing screenshots "is a mere conclusory statement," and further "factual allegations" were required to meet the *Iqbal*/*Twombly* standard. *Id.* Because American Patents' Complaint here merely parrots

2

the claim limitations and pastes unexplained excerpts from webpages belonging to Panasonic and Google, the Court should dismiss the direct infringement claims.

## II. THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM OF DIRECT PATENT INFRINGEMENT AS TO THE NETWORK PATENTS

American Patents also misstates Panasonic's position as to the Network Patents, stating "Panasonic appears to argue that the complaint's allegations are insufficient because Panasonic believes it does not infringe—a belief that is, of course, irrelevant at this stage." (Resp., p. 7). Here, American Patents does not dispute that selling a device cannot infringe a method claim; instead, it simply ignores this fatal legal point.

American Patents has only asserted infringement of method claims for the Network Patents, and it is black letter law that infringement of a method claim occurs only "when the claimed process is performed." *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006). American Patents does not allege that the accused products as sold perform the steps of the patented method. Therefore, American Patents' direct infringement claims should also be dismissed because Panasonic is not alleged to have performed the patented methods.

Panasonic products do not have the Google Home application pre-installed nor does Panasonic offer products that are bundled with Google Chromecast. (*See* Mot., p. 15-16). American Patents does not dispute this. Rather, it cryptically responds that "Panasonic *does* sell the devices that American Patents *did* accuse, the Panasonic Toughbook T1 and the Panasonic Toughbook N1" and these products "run on the Android operating system, which is specifically designed to work with and stream to Google Chromecast devices . . . ." (Resp. p. 7). This argument, however, does not address the key point that Panasonic cannot itself have performed the patented methods, without modification and subsequent acts that may or may not be performed by a downstream user relating to the use of third-party (i.e., Google) software. The Google Home and Google Chromecast features are the only features

3

referenced in the Complaint's recitation of claim elements.  (*See* Compl. ¶¶ 54-55, 65-66).  American Patents' Complaint lacks any plausible basis for alleging that Panasonic products directly infringe without Google Home or Google Chromecast.

This very point was recently addressed in this district in *Chapterhouse, LLC v. Shopify, Inc.*, No. 2:18-cv-0300-JRG, 2018 WL 6981828 (E.D. Tex. Dec. 11, 2018).  In *Chapterhouse*, the direct infringement allegations were "premised on integrating an application called 'Spently' with the [Defendant's accused] Shopify system."  *Id.* at *3.  Judge Gilstrap dismissed these claims because the complaint did not allege that the defendant "owns or controls the Spently app," such that the Defendant could be held legally responsible if the app performed certain claim steps. *Id.* The same is true here. American Patents' Complaint lacks any allegations that support the proposition that Panasonic could or should be liable for an app (Google Home) or device (Google Chromecast) that it does not sell.

American Patents seeks to pivot from its legally flawed allegations and argue that Panasonic directly infringes by *using* its own products. (Resp., pp. 7-8).  This argument cannot save American Patents.  Because there are *no factual allegations* in the Complaint regarding Panasonic's alleged use. The screenshots and website citations in the Complaint do not suggest or support the allegations that Panasonic uses the accused devices to perform the steps of the asserted method claims; all they show is that Panasonic offers the accused devices for sale and that Google separately offers separate products that can be used to stream video between devices.  The Complaint makes a bare and unsupported allegation that Panasonic infringes "by making, having made, using, importing, providing, supplying, distributing, selling, or offering for sale systems utilizing a method."  Compl. ¶¶ 52.  Such bare allegations need not be taken as true, *see Iqbal*, 556 U.S. at 678, and there is no other factual allegation in the Complaint that meets the minimum pleading standards of *Iqbal*/*Twombly*.

American Patent's last ditch argument is that its Complaint was not limited to method claims. This is incorrect.  American Patents chose to plead alleged facts only as to Claim 5 of the '655 Patent

and Claim 1 of the '090 Patent, both of which are method claims. There is no mention in the Complaint of the "multiple apparatus claims" of the Network Patents that American Patents now mentions in its Opposition Brief. (Resp., p. 8). Since American Patents did not plead infringement of any apparatus claim, it should be held to that choice.

### III. THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM OF DIRECT PATENT INFRINGEMENT AS TO CLAIM 1 OF BOTH DYNAMIC CONFIGURATION PATENTS AND THE MIMO '782 PATENT

The claims of direct infringement for Claim 1 of the '049 Dynamic Configuration Patent, Claim 1 of the '626 Dynamic Configuration Patent, and the MIMO '782 Patent must be dismissed for the same reason as the Network Patents: American Patents asserts only method claims, and there are no allegations that the accused infringer, Panasonic, performs all of the steps of the claimed methods. (See Mot., p. 13-14, 16-18).

American Patents' only response to this argument is to assert – as they did with respect to the Network Patents – (i) that they allege infringement based on Panasonic's "use" of the accused devices; and (ii) that these patents also include apparatus claims. These arguments should be rejected for the same reasons explained in Section II. First, American Patents did not include any factual allegations – no who, what, when, where, how – of any alleged use by Panasonic. Second, American Patents must be held to the actual claims it asserted– not some other unstated and unexplained apparatus claims.

### IV. THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM OF INDIRECT PATENT INFRINGEMENT FOR ANY PATENT

There are two independent bases to dismiss American Patents claims for indirect infringement. (*See* Mot., pp. 18-21). First, American Patents' indirect infringement claims fail because indirect infringement requires that there be an underlying direct infringement claim. *Lochner Techs., LLC v. AT Labs Inc.,* No. 2:11-cv-242-JRG, 2012 WL 2595288, at *2 (E.D. Tex. July 5, 2012).

Second, American Patents' indirect infringement claims – both for active inducement and contributory infringement – are also deficient because the two boilerplate paragraph allegations that

form the totality of American Patents' indirect infringement pleading are so threadbare and generic as to be meaningless. Such allegations – which are made generally as to all asserted patents without any reference to any specific actions taken by Panasonic – are insufficient. *Iqbal*, 556 U.S. at 687 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" do not satisfy the baseline pleading standards).

### A. Active Inducement

As to active inducement, American Patents does not address its failure to meet the pleading standards for induced infringement. In order to plead a plausible claim of active inducement, American Patents must allege that the accused infringer, *Panasonic*, took active steps to induce infringement. On this point, American Patents argues that it "specifically pleaded that Panasonic committed acts of inducing infringement, including, for example, 'distributing instructions that guide uses to use the products in an infringing matter." (Resp., p. 9 (*citing* Original Complaint, ¶103)). However, there is *no* underlying factual basis for this bare allegation for any of the asserted seven patents-in-suit. What "instructions" is American Patents even referring to? Indeed, the only instructional materials that are referenced in the Complaint are those published and distributed by third parties, such as Google. (*See* Mot., pp. 19-20). Such "*generic allegations* that an alleged infringer provides instructional materials along with the accused products, *without more*, are insufficient to create a reasonable inference of specific intent for the purposes of an induced infringement claim." *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:14-cv-752-JRG-JDL, 2015 WL 4910427, at *4 (E.D. Tex. Aug. 14, 2015)

American Patents cites *Cywee Group Ltd v. Huawei Device Co.*, No. 2L17-cv-495, 2018 WL 3819392, at *2 (E.D. Tex. 2018) for the proposition that allegations that a defendant provides instructions are sufficient to plead induced infringement. But the complaint in *Cywee*, unlike here, illustrated its indirect infringement allegations by "describe[ing] *three [of Defendant's] user manuals*

that teach allegedly infringement behavior, *and attach[ing] each to the third amended complaint.*" *Id.* at *4 (emphasis added). American Patents' Complaint here lacks any detail at all, let alone detail specific to Panasonic. It fails to reference, quote from, or cite to any actual manual that Panasonic provides to support its inducement allegations. Accordingly, American Patents claims for inducement are not plausible and should be dismissed.

### B. Contributory Infringement

American Patents' contributory infringement claims are similarly flawed. As with inducement, a plaintiff must also plead knowledge. *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015). In addition, a further necessary element of a contributory infringement claim is that the accused component of a patented device has no "substantial noninfringing uses." 35 U.S.C.§ 271(c)

The sum total of American Patents' contributory infringement allegations are made in a single generic paragraph for all of the patents-in-suit that simply recites the accused features and parrots the standards for contributory infringement. (Mot., p. 20-21). The Complaint alleges no facts regarding substantial non-infringing uses of any such component for any asserted patent. American Patents incorrectly argues that its generic boilerplate allegations are sufficient because it "specifically pleaded that the accused products have special features that have no substantial use other than uses that infringe American Patents' patents." (Resp., p. 11 citing Original Compl. ¶105)). What are these "special features"? American Patents identifies them as "improved wireless communication capabilities…in a manner that infringes" "initiation and/or control of Internet streamed content…in a manner that infringes" and "advanced keyboard layout capabilities in a manner that infringes." As is clear on its face, these features are defined in general and circular terms that fail to provide Panasonic with any fair notice as to what is alleged to infringe. (Mot., p. 20-21).

7

In addition, American Patents' criticism of Panasonic's "substantial non-infringing use" position is misplaced, because the law requires that only the separate component with the special feature should be at issue for whether that component has "no non-infringing use." 35 U.S.C. §271(c); *see also InMotion Imagery Techs v. Brain Damage Films*, No. 2:11-cv-414-JRG, 2012 WL 3283371, at *3 (E.D. Tex. Aug. 10, 2012). If the component having the special feature is not separable from the larger product, the entire product should be at issue for the "no non-infringing uses" inquiry. *Id.* Both cases cited by American Patents in its opposition brief, *Ricoh v. Quanta Computer, Inc.* and *i4i Limited Partnership*, involved cases where components with special features were separable from the larger product. The Complaint does not allege facts to establish whether or not that is the case here.

## V. THE INDIRECT INFRINGEMENT CLAIMS SHOULD BE DISMISSED AS TO PRE-SUIT CONDUCT

American Patents' allegations of indirect infringement also be dismissed as to conduct occurring prior to the filing of its Complaint because it fails to allege knowledge of the asserted patents prior to its filing—a requirement for both types of indirect infringement. American Patents does not dispute that it fails to allege that Panasonic had knowledge of any of the asserted patents. Rather, American Patents ignores that deficiency and argues its pre-suit claims are supported by its bare "allegation that Panasonic was willfully blind to the existence of the asserted patents before the suit was filed." (Resp., p. 12). Notably, American Patents "willful blindness" claim is based solely on a line from a 2008 law review article by Professor Mark Lemley, in which Prof. Lemley opines that "Virtually everyone does it…Companies and their lawyers tell engineers not to read patents. . . ." (*Id.*)

This allegation is not factually supported, plausible, or sufficient to support a claim of pre-suit indirect infringement. First, American Patents does not cite to a single fact or piece of evidence associated with Panasonic. Indeed, the very fact that American Patents has made these identical allegations against 11 different companies belies the assertion that it is at all related to or specific to

Panasonic. Second, Professor Lemley's unsworn speculation from ten years ago about the general culture of technology companies and patents does not support a claim that Panasonic blinded itself to the existence of the asserted patents in this case. *Iqbal* and *Twombly* require factual allegations about the accused products and the parties and patents involved in a particular case.

Furthermore, the unplead allegation that companies do not review patents is insufficient to support a claim of willful blindness. As the Supreme Court has explained, "a willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011). As American Patents acknowledges, courts in this district have properly concluded that a company's dislike of patents generally does not meet this standard. *See Nonend Inventions, N.V. v. Apple, Inc.*, 2016 WL 1253740, at *2-3 (E.D. Tex. Mar. 30, 2016) (Finding that "Motorola's policy of asking its employees to ignore patents and patent applications does not per se constitute 'willful blindness'… more must be alleged to "rise to the level of 'willful blindness.'")

## VI. THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM OF WILLFUL INFRINGEMENT FOR ANY PATENT

In order to plead a claim for willful infringement, a plaintiff must show "culpable infringement behavior, characterized as 'willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or – indeed – characteristic of a pirate." *Huawei Techs. Co. v. T-Mobile US Inc.*, No. 2:16-cv-0052-JRG-RSP, 2017 WL 1129951, at *4 (E.D. Tex. Feb. 21, 2017) (citing *Halo Elecs, Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016)).[1] This can be shown by proving that the defendant "acted despite a risk of infringement that was known or so obvious that it should have been known to the defendant. *WesternGeco LLC v. ION Geophysical Corp.*, 837 F.3d 1358, 1362 (Fed. Cir. 2016).

---

[1] The opposition brief cites to *Script v. Amazon*, *see* Resp., p. 13, 15, and claims that American Patents has met the pleading requirements set forth there. However, Script is inapplicable since the pleading requirements set forth there deal with the pleading requirements set out by Seagate, which has since been abrogated by *Halo*.

9

However, American Patents did not plead any "culpable infringement behavior." Indeed, all that American Patents offers is an unsupported assertion from a law review article that has no factual link to Panasonicor the patents asserted in this case. This falls far short of the type of allegation that is sufficient or plausible under *Iqbal*/*Twombly*.

## VII. PRE-SUIT WILLFUL INFRINGEMENT ALLEGATIONS SHOULD BE DISMISSED

American Patents opposition brief misstates Panasonic's position as "willful infringement must be based on pre-suit knowledge of the patents." (Resp. at 15). Panasonic's contention is that the law requires pre-suit knowledge of the patent to allege willfulness *for pre-suit conduct*. *See T-Rex Prop. AB v. Regal Entm't Group*, No. 6:16-cv-1029-0RWS-KNM, 2017 WL 4229372, at *10 (E.D. Tex. Aug. 31, 2017) (no pre-suit willful infringement despite allegations of constructive knowledge or willful blindness because there were no facts such as how or when defendant acquired constructive knowledge of the patents pre-suit). American Patents argues that it adequately pled pre-suit knowledge by pleading that Panasonic had "a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of American Patents' rights under the patents." (Resp., p. 16). This is incorrect. First, there is no authority that holds that willful blindness may be a substitute for actual or constructive knowledge of infringement. Second, the Complaint has not alleged facts to support its claim of willful blindness.

## VIII. CONCLUSION

For all these reasons, Panasonic respectfully requests that the Court dismiss American Patents' Original Complaint.

DATED: February 6, 2019            Respectfully submitted,

                                                 WIGGIN AND DANA LLP

By: *Joseph M. Casino by Trey Yarbrough w/permission*
Joseph M. Casino
Michael J. Kasdan
Attorneys for Defendant
PANASONIC CORPORATION OF NORTH AMERICA
437 Madison Avenue
35th Floor
New York, NY 10022
212.551.2600

Trey Yarbrough
Bar No. 22133500
Dallas W. Tharpe
Bar No. 24052036
YARBROUGH WILCOX, PLLC
100 E. Ferguson St., Ste. 1015
Tyler, TX 75702
(903) 595-3111
Fax: (903) 595-0191
trey@yw-lawfirm.com
dallas@yw-lawfirm.com

Attorneys for Defendant
PANASONIC CORPORATION OF NORTH AMERICA

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on February 6, 2019. All other counsel not deemed to have consented to service in such manner will be served via facsimile transmission and/or first class mail.

>                                */s/ Trey Yarbrough*
>                                Trey Yarbrough